NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GEON UK KIM, | : | |
| Plaintiff, | : | Civil Action No. 12-5032 (CCC) |
| v. | : | |
| ERIC HOLDER, | : | |
| Defendant. | : | |
| PARAMESWARAN KUNCHITHAPATHAM, | : | |
| Plaintiff, | : | Civil Action No. 12-5195 (CCC) |
| v. | : | |
| U.S. CITIZENSHIP & IMMIGRATION SERVICE, | : | **MEMORANDUM OPINION** **APPLIES TO BOTH ACTIONS** |
| Defendant. | : | |

**Cecchi**, District Judge.

These two matters come before the Court upon the Clerk's filing of two applications seeking mandamus relief. See Kim v. Holder ("Kim"), Civil Action No. 12-5032 (CCC), Docket Entry No. 1, and Kunchithapatham v. USCIS ("Kunchithapatham"), Civil Action No. 12-5195 (CCC), Docket Entry No. 1.[1] The Kim action was commenced pro se, while the plaintiff in Kunchithapatham filed a counseled application prepared by an out-of-District attorney who moved for pro hac vice admission upon a motion by a local liaison

---

[1] Each of the plaintiffs prepaid the $350 filing fee.

counsel. Both applications are silent as to whether the defendants in these cases have been served.[2]

## I. Background

The applications at bar are substantively identical. In Kim, the plaintiff, a South Korean native currently residing in the State of New York, duly applied for adjustment of his immigration status by filing an I-485 form on January 17, 2012. See Kim, Docket Entry No. 1, at 1. The plaintiff in Kunchithapatham, a New Jersey resident and native of Sri Lanka, duly applied for the same on November 27, 2000. See Kunchithapatham, Docket Entry No. 1, at 2. Each of these plaintiffs grew dissatisfied with the pace of the agency determinations and alleged lack of responses to occasional administrative inquiries.[3] See, generally, Kim, Docket Entry No. 1, and Kunchithapatham, Docket Entry No. 1. Each plaintiff subsequently initiated the instant matters by way of a petition for mandamus relief, asking this Court to speed up the application process and ensure the requested status adjustments are given. See id.

---

[2] It is unclear whether service was effectuated in either case. However, because this issue is not relevant to the jurisdictional issue at hand, the Court need not explore whether service was proper.

[3] Both matters were commenced in August 2012, meaning that the plaintiff in Kim waited approximately seven months for an agency determination, while the Kunchithapatham plaintiff waited for the same for approximately twenty-one months.

## II. Discussion

### A. Mandamus Action

Section 1361 provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus relief under Section 1361 is an "extraordinary remedy," which should be utilized only to compel the performance of "a clear non-discretionary duty." Pittston Coal Group v. Sebben, 488 U.S. 105, 121 (1988); Vaso v. Chertoff, 369 F. App'x 395, 400 (3d Cir. 2010) ("writs of mandamus are only available to compel 'a legal duty which is a specific, plain ministerial act devoid of the exercise of judgment or discretion'"). "An act is ministerial only when its performance is positively commanded and so plainly prescribed as to be free from doubt." Harmon Cove Condo. Ass'n, Inc. v. Marsh, 815 F.2d 949, 951 (3d Cir. 1987); see also Heckler v. Ringer, 466 U.S. 602, 616 (1984) (writ of mandamus is intended to provide a remedy only if the defendant has a clear, nondiscretionary duty to act.). The remedy of mandamus is a drastic one, and it should be invoked only in extraordinary situations. See Will v. United States, 389 U.S. 90, 95-96 (1967). The party seeking the issuance of the writ has the burden of demonstrating that no other adequate means are available to obtain the relief desired, Allied Chem. Corp. v.

Daiflon, Inc., 449 U.S. 33, 35 (1980), and that the right to the issuance of the writ is "clear and indisputable." Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 384 (1953). The decision to issue the writ is largely within the discretion of the court to which the petition is addressed. See Kerr v. U.S. Dist. Court, 426 U.S. 394, 403 (1976).

### B.  The Goal of Status Adjustment

The determination as to whether the plaintiffs' status should be adjusted is necessarily a discretionary agency function: their I-485 applications could be granted or denied. Thus, no mandamus relief is warranted as to that discretionary issue.[4]

---

[4]  Section 1252 of the Immigration and Nationality Act ("INA") provides, in pertinent part, that:

> Notwithstanding any other provision of law (statutory or nonstatutory), including [mandamus actions under Section 1361] . . . no court shall have jurisdiction to review—
>
> (i)      any judgment regarding the granting of relief under section . . . 1255 [adjustment of status] . . . or
> (ii)     any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]

8 U.S.C. § 1252(a)(2)(B).

Thus, the ultimate decision to grant or deny the plaintiffs' status adjustment applications falls within the discretion of either the Attorney General or the Secretary of Homeland

C.  The Pace of Administrative Process

It appears that both plaintiffs are aware that mandamus relief is unavailable with respect to compelling a status adjustment. However, plaintiffs appear to argue that this Court has mandamus jurisdiction to direct the agency to speed up the process of ruling on their I-485 forms. See, generally, Kim, Docket Entry No. 1, and Kunchithapatham, Docket Entry No. 1. Plaintiffs are incorrect.

1.  The Process of Obtaining a Status Adjustment

When an applicant seeks an adjustment of status, the United States Citizenship and Immigration Services ("USCIS") and Federal Bureau of Investigation ("FBI") conduct security and background checks, including FBI fingerprint checks, FBI name checks, and checks against the Interagency Border Inspection System maintained by the Department of Homeland Security, which includes information from more than twenty federal law enforcement and intelligence agencies. See, e.g., Qiao Er Wu v. Napolitano, 2011 U.S. Dist. LEXIS 111499, at *3-4 (D.N.J. Sept. 29, 2011). "Such measures ensure that applicants do not pose a risk to either public safety or national security;" they also "ensure that

---

Security.

5

applicants are eligible for immigration benefits," i.e., the status sought by application.[5]  Id. at 4.

> Moreover, even if the agency determines that the applicant
>
> [is] eligible for an adjustment of status, [it does not necessarily mean that the agency can approve the] application [if there are] no visa numbers available to assign to [the applicant. The reality is that], at any given time, the USCIS is able to issue only a limited number of visas in each category.  The USCIS determines the number of available visas in a category based on several variables, including past number use, estimates of future number use and return dates, and estimates of USCIS demand and pending USCIS number requests.  If the number of eligible applicants in a category is less than the number of visas available for that category, then the category is considered "current," and the USCIS is able to issue visas to every eligible applicant.  If, on the other hand, the number of eligible applicants in a category is greater than the number of visas available for that particular category, the USCIS must set a visa availability cut-off date. In such instances, the USCIS will award visas to all eligible applicants who filed I-485 applications prior to the cut-off date, but will withhold any final decision on applications filed after the cut-off date. . . . Thus, . . . even if [the applicant is] entitled to relief, [the agency] would be unable to grant [the applicant] an adjustment of status because there is no visa number currently available to [the applicant. Which, in turn, means] that, if forced to rule on [the applicant's] application, [the agency having no visa number to issue] would have no choice but to deny [the applicant's] request for an adjustment of status [hence placing the applicant in a position far less advantageous than that of being simply "in waiting"].

---

[5]  For instance, these investigations determine whether the applicant "has violated Section 212 of the INA by seeking to procure a visa, other documentation, or admission into the United States or other immigration benefit by committing fraud or willfully misrepresenting a material fact."  Qiao Er Wu, 2011 U.S. Dist. LEXIS 111499, at *5 (quotation marks, original brackets, citation to the docket and ellipses omitted).

Bian v. Clinton, 605 F.3d 249, 251 (5th Cir. 2010).

### 2. The Governing Law Bars Jurisdiction

8 C.F.R. § 103.2(b)(18), entitled "Withholding Adjudication," confers discretion on the immigration officers and directors to withhold adjudication while applications like those submitted by plaintiffs are being investigated.[6] Because Section 1252 of the Immigration and Nationality Act indicates that this Court lacks jurisdiction over matters within the discretion of the Attorney General or the Secretary of Homeland Security, see 8 U.S.C. § 1252(a)(2)(B)(ii), and because 8 C.F.R. § 103.2(b)(18) "establishes that withholding adjudication is a matter of such discretion," Qiao Er Wu, 2011 U.S. Dist. LEXIS 111499, at *10, this Court lacks subject matter jurisdiction over the plaintiffs' challenges.[7] Accord id. (dismissing the claims of an applicant

---

[6] The provision states that an immigration officer or director may withhold adjudication every six months if (s)he "determines it is necessary to continue to withhold adjudication pending completion of the investigation." 8 C.F.R. § 103.2(b)(18).

[7] See also Safadi v. Howard, 466 F. Supp. 2d 696 (E.D. Va. 2006) (where the plaintiff completed all of the usual security checks, but the USCIS asserted that there were issues that required further inquiry, the court denied relief noting that the term "action" in Section 1252 "encompasses any act or series of acts that are discretionary within the adjustment of status process, including the pace" of adjudication and, therefore, the court lacked both mandamus jurisdiction to compel a speedier adjudication of the plaintiff's I-485 application and jurisdiction under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq. because the defendants had no clear, non-discretionary duty to adjudicate an I-485 application within a particular time period); accord Qiu v. Chertoff, 486 F. Supp.

who filed a petition after not getting an agency determination for three years); Abanov v. Gonzales, 2007 U.S. Dist. LEXIS 72630 (S.D. Tex. Sept. 28, 2007) (collecting cases and holding that Congress has made it clear that federal courts are without jurisdiction to hear complaints regarding the USCIS's pace of adjudication); Bugulu v. Gonzalez, 490 F. Supp. 2d 965, 967 (W.D. Wis. 2007) (holding that federal courts lack "subject matter jurisdiction . . . concerning the delay in processing . . . adjustment status application[s] because it is a discretionary action by the [USCIS] pursuant to [Section 1252]").

Perhaps the most instructive decision on this issue was entered by the United States Court of Appeals for the Eighth Circuit, which reasoned as follows:

[8 U.S.C. § 1255(a)] specifies that

> The status of an alien who was admitted . . . into the United States . . . *may* be adjusted by the Attorney General, *in his discretion and under such regulations as he may prescribe* . . . .

Importantly, [this statute] does not specify a deadline or even a time frame for adjudication of applications, instead committing not only the USCIS's decision but

---

2d 412 (D.N.J. 2007) (where the plaintiff waited over two years for an agency status-adjustment determination, the court dismissed the plaintiff's pleading finding that the lack of a non-discretionary duty precluded jurisdiction under Section 1361 and the APA, and, furthermore, that Section 1252 prohibited judicial review of the Attorney General's actions or inactions relating to the adjustment of a plaintiff's immigration status); Serrano v. Quarantillo, 2007 U.S. Dist. LEXIS 26310 (D.N.J. Apr. 9, 2007) (same).

8

also any "regulations" necessary for making such a decision to agency discretion. In addition, 8 U.S.C. § 1252, the INA's jurisdiction-stripping provision, specifies that

> [n]otwithstanding any other provision of law (statutory or nonstatutory) . . . and [28 U.S.C.] sections 1361 and 1651 . . . no court shall have jurisdiction to review
>
> (i)   any judgment regarding the granting of relief under section . . . 1255 [adjustment of status] . . . or
>
> (ii)  *any other decision or action* of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . .

It is noteworthy that Section 1252 applies not only to the USCIS's grant or denial of an application for adjustment of status, but also to "any other decision or action" within the USCIS's discretion. If Congress had intended for only the USCIS's ultimate decision to grant or deny an application to be discretionary -- as distinguished from its interim decisions made during the adjudicative process -- then the word "action" would be superfluous. Instead, Section 1252 expressly exempts from judicial review any "action" that is within the USCIS's discretion and is necessary to carry out the agency's statutory grant of authority. This includes establishing "such regulations as [the agency] may prescribe" to carry out its statutory duty, such as 8 C.F.R. § 245.2(a)(5)(ii), which specifies that "[a]n application for adjustment of status, as a preference alien, shall not be approved until an immigrant visa number has been allocated by the Department of State . . . ." {Where a litigant] contests the USCIS's decision to adjudicate [the litigant's] application in compliance with regulations that are clearly within the agency's discretion to establish, the federal courts are without [mandamus or APA] jurisdiction to entertain [the litigant's] claim . . . [because] "mandamus is not available to review the discretionary acts of officials" . . . [and] the APA does not apply to the extent that other "statutes preclude judicial review"

>or "agency action is committed to agency discretion by law."

Bian, 605 F.3d at 253-55; see also Mudric v. Att'y Gen. of the U.S., 469 F.3d 94, 99 (3d Cir. 2006) ("the various discretionary privileges and benefits conferred on aliens by our federal immigration laws do not vest in aliens a constitutional right to have their immigration matters adjudicated in the most expeditious manner possible"); Ryan v. Dedvukaj, 2009 U.S. Dist. LEXIS 106077 ( E.D. Mich. Nov. 13, 2009) (same); Assadzadeh v. Mueller, 2007 WL 3252771 (E.D. Pa. Oct. 30, 2007) ("neither the INA, USCIS's regulations, or the APA provide the requisite firm deadline for adjudicating Plaintiff's application for naturalization, a discretionary immigration benefit.  The APA does impose a 'reasonable time' requirement for adjudication of naturalization applications, but this is not a 'hard-and-fast deadline.'  Absent a specific mandate entitling Plaintiff to naturalization or processing of his application within a specific time-frame, Plaintiff does not have a constitutional right to timely adjudication of his application").

This Court finds the above-discussed reasoning persuasive. Therefore, although the Court is sympathetic to plaintiffs' issues, it is compelled to dismiss the applications at bar for lack of jurisdiction.[8]  Accord Jian Chun Shi v. Napolitano, 2009

---

[8] As a courtesy, the Court will direct service of this Memorandum Opinion upon the Office of the United States Attorney

U.S. Dist. LEXIS 114722 (E.D. Pa. Dec. 2, 2009) (coming to the same conclusion while expressing an analogous sentiment).

### III. Conclusion

For the foregoing reasons, both applications will be dismissed for lack of jurisdiction.[9]

An appropriate Order accompanies this Memorandum Opinion.

_____
Claire C. Cecchi
United States District Judge

Dated: January 25, 2013

---

for the District of New Jersey ("OUSA") so to allow the OUSA, only if the OUSA finds such action warranted, to forward this Memorandum Opinion to an appropriate agency, in order to allow that agency, in its absolute discretion, an opportunity to contact the plaintiffs and to update them on the progress stage of their status adjustment applications. The Court, however, stresses that no statement made in this Memorandum Opinion or in the Order filed herewith shall be construed as imposing any affirmative obligation on the OUSA or on the agency to which the OUSA forwards this Memorandum Opinion. The Court underscores that all such actions could be undertaken only as pure courtesy.

[9] The application seeking leave to appear pro hac vice in Kunchithapatham v. USCIS, Civil Action No. 12-5195 (CCC), Docket Entry No. 2, will be granted, as duly supported by a motion filed by liaison counsel admitted to practice in this District. See Local Civ. R. 101.1(c)(4).

11